Mr. Brown's sole defense at trial was that the death of his longtime partner and the mother of his child was accidentally caused by the discharge of his crudely modified shotgun. At trial, counsel failed to share the most compelling evidence at his ready disposal, that is, expert testimony that, given the state of the shotgun, there was a high likelihood for it to be fired accidentally, and that that likelihood of an accidental firing would increase even more in stressful or life-threatening situations, circumstances which the facts of trial showed matched those of the trial. Now, there's a reasonable probability that, had the jury heard that expert testimony, Mr. Brown would not have been found guilty of first-degree murder, and this is particularly the case in light of evidence that trial counsel, to his credit, did elicit from state witnesses, not his own witnesses, but state witnesses. And that evidence is that Mr. Brown, on the night in question, did not know where the victim was, that as he was walking back to his apartment, he saw blinds move. Now, the state witness, Mr. Casius, also confirmed that he saw blinds move once at the top of the stairs right before they go in the apartment. What other evidence did state witnesses provide? Well, Mr. Casius testified that Mr. Brown announced himself. He said, someone's about to get shot. Now, state witnesses, investigators, I believe it was the detective, noted that the hallway that Mr. Brown went in before the shotgun was off was three and a half feet wide. That is a narrow hallway, and this happened approximately at five in the morning. Now, state witnesses also testified to Mr. Brown's reaction after the shooting, and I quote, they said he was hysterical, scared, and in shock. He was, quote, bawling. You know, maybe we can just move this on a little bit, because your time is clicking down, and there's some hard legal issues, I think, in your case that I'd like to focus on, if you don't mind. So, as I understand the briefs that are before us, there's one certified issue having to deal with the expert about the gun, correct? Yes. And then two uncertified issues. Yes. Okay. So, your initial remarks, I gather, were focused at the certified issue dealing with the expert. Yes. I forget what his name is. There's too many cases. Robert Irwin. Yes. Now, as I understand it, his counsel at trial had identified him and had consulted with him before the trial. Is that correct? Yes. But at trial, they didn't call him to testify, and we learned afterwards that apparently his counsel didn't provide him with all the information. Yes, Your Honor. So, what we know is that trial counsel gave him the shotgun, gave the expert the shotgun, but he only gave him the barrel of the shotgun. Not the pistol stock. Not the stock. Not the stock. And I provided pictures with my motion. Right. Yes. With the stock is the long, wooden part of the shotgun that one presses against your shoulder, but that was not provided. Right. In this case, the shotgun did not have a stock. It had a pistol grip, as you know. Yes. And that was taped. It wasn't attached with anything. It was just taped. Okay. Now, when we get to the federal court, the federal habeas petition, well, I guess even before that, in the state habeas proceedings, at some point along the way, the expert's declaration was presented to the Nevada Supreme Court, and they wouldn't consider it. Yes. Is that right? Okay. But we get to the federal court, and the expert's declaration comes in. There's a hearing, right? I can't remember exactly. There's only a hearing at the state level. Okay. Okay. Now, let me – but nonetheless, in the federal proceeding, we do get his declaration. Is that right? So the declaration is filed on appeal to the Nevada Supreme Court. What happens is state post-conviction counsel at the district court level did such a poor job that he was replaced on appeal. State post-conviction counsel didn't do any investigation regarding the firearm. The sole claim raised at the state district court level was raised by Mr. Brown Pro Se. They get an evidentiary hearing, and there's testimony regarding the firearm, but the claim before the court is not asserted. Right. On appeal to the Nevada Supreme Court, a new counsel comes in, and her investigator calls Mr. Irwin and talks to Mr. Irwin. And based on that conversation, a new appellate state counsel files both a motion for leave to file new evidence and a motion to remand back to the district court. Now, the Nevada Supreme Court denies both motions. Right. Okay. So what I'm going to get at is in – so in federal court, in comes Mr. Irwin's declaration. Is that right? Yes, it comes – And it's considered by the district court. Yes. All right. So after Shin, Supreme Court's recent decision, can we consider it? Absolutely, Your Honor. Why? Well, Shin doesn't even – shouldn't even factor in the court's decision, in my opinion, Your Honor, because the declaration was made part of the state record on appeal to the Nevada Supreme Court. It was filed with the Nevada Supreme Court. The Nevada Supreme Court – I could see moving ahead on this case without making that determination, but it was filed after briefing was complete, and the Nevada Supreme Court did not consider it. Is that correct? It was not considered. It was not – yes, it was not considered. The – Mr. Brown's case was not decided on the merits, considering that – It was not accepted. But to be clear, the declaration of Mr. Irwin wasn't accepted, and as I understand it, in the effort to expand the record, the Nevada court said no, and this was a second and successive petition that had been procedurally defaulted. Is that the status of the Nevada determination? Right. Okay. Mr. Brown submitted this affidavit twice, really. First on – during initial post-conviction proceedings on appeal, as I already stated, and then he went back to state court in 2015, and he filed again this affidavit, and that's when the court said that it was procedurally defaulted. But going back to Judge Paez's question and Shin's, if in order to consider this, we need to look at whether he falls within the 2254E exceptions, I would appreciate hearing your argument on that. Well, 2254E is clear, as Justice Thomas explained in the Shin matter, Your Honor, and that 2254E2 states that if the applicant has failed to develop the factual basis of a claim, 2254E2 does not state that it's not a rule that deals with procedural default or whether claims are adjudicated or barred by the procedural default rule. The procedural default rule is a judicial construct. 2254E2, as you know, it's a statute, and it should be given its plain meaning. Now, that is the first argument. The second argument is that the Supreme Court's decision in Williams v. Taylor is clear as well. It says that should the facts not be developed, which in this case I would argue that they were, the court must ask whether the record was inadequately developed because of a lack of diligence or some greater fault attributable to the prisoner or the prisoner's counsel. Now, in this case, there wasn't a lack of diligence, because in this case the Nevada Supreme Court was unnoticed that state post-conviction counsel had not investigated this issue. Mr. Brown had filed several motions to substitute counsel. He had filed even a bar complaint. He had continued to file pro se pleadings despite being represented. State appellate counsel comes in, and she files, again, these motions to remand and to admit newly discovered evidence. And at that point, I believe that given the record, the Nevada Supreme Court had a duty to remand the case and develop this evidence. Well, they may have had a duty to remand the case, but on habeas review, it's not in our bailiwick to say, hey, Nevada Supreme Court, you abused your discretion in not carrying out your duty in remanding this case to the Nevada District Court for further consideration. I think Shin really poses a problem for you, so I think it's critical to your argument. And I realize Shin is just a recent case by the Supreme Court, but we have to deal with that. I mean, I think Shin, you look at Shin, and then you read Martinez, and then you read Shin, and I think what the Court's saying is the Martinez claim has to be based on the record that was developed in the state court proceedings, whether in the initial trial proceedings or in the post-state, post-conviction proceedings. But there's also a due diligence component to that argument. Well, you also have to go to that. If you satisfy 2254E, then you also have to show due diligence. But I think Judge Sessions has a question for you. Yeah, I was going to just change the focus a little bit to, in fact, to explore the declaration of Irwin. He was basically suggesting that there would be a greater risk of a gun being fired, assuming that the person had the finger on the trigger. Is that correct, or is that not correct? Well, what he said was that there was a high likelihood that the gun would be fired if the, I guess, grip moved or was bumped. Well, that's true, but that's also at the time that at least it's always been accepted that the defendant, the petitioner, had his finger on the trigger, and that was always a part of his evaluation. Is that correct? Yes, it was never disputed at trial that Mr. Brown did not pull the trigger, the argument which he said he was. Okay, so then you start looking at the cross-examination of the defense counsel who really addressed all of the same issues that Irwin presents, does he not? He does not, Your Honor. Okay, so what are the things that he did not cover on cross-examination which would be relevant? Well, the state expert basically attempted to undermine the safety, the risk posed by the firearm. He said that the pistol grip was not ideal, and that's a direct quote. That's what he said, that it wasn't ideal. He said that he wouldn't handle the firearm with the stock, but he also said he wouldn't handle it without the stock. So he equivocated between the dangers posed by a stockless gun or a gripless gun and a non-gripless weapon. So at all times, he sought to undermine the safety risks, and I think I parsed that out thoroughly in the briefs, Your Honor. It looks like my time is almost out. We'll give you a little bit of time for rebuttal. Okay. I don't know if Judge McKeown has any other questions. Nothing further now. Okay. All right, thank you. We'll hear from the state now. Good morning, Your Honors. May it please the Court. Matthew Johnson, Deputy Attorney General for the State of Nevada, representing the respondents to penalties in this matter. Your Honor, in this case, post-conviction counsel didn't have an obligation to track down the firearms expert six years after this trial, and he hasn't demonstrated either cause or prejudice to overcome his procedurally defaulted claim. And there's actually nothing in the record to suggest that post-conviction counsel should have even known that this firearms expert six years earlier should have been, was not provided with information or the stock that it was loosely fitted. And what Kashar Brown is asking you to find, essentially, is that post-conviction counsel has some sort of duty to follow up with every single expert, not just that testified, but that's retained in any trial in order to perform effectively. And in this case, that wasn't something that he had an obligation under Strickland, which is what this Court is supposed to analyze post-conviction counsel's effectiveness under. And I think you only need to look as far as the investigator for the post-conviction counsel to come to that conclusion. Now, that investigator did learn the information that the firearms expert six years earlier wasn't provided with that stock or the loosely fitting information. But just because he may have gone above and beyond doesn't mean that he set the standard for every post-conviction counsel. And I'd like to read to you from his affidavit where he said this, and I think this is important when you're analyzing post-conviction counsel's effectiveness. He said in his declaration, nothing in the records we possessed, nor in the record below indicated that Mr. Coffey, the trial attorney, had failed to provide Mr. Irwin with the stock that belonged to the shotgun used in the shooting of Rebecca Hansen. That's the actual investigator that learned this information. And this declaration wasn't found until two years after the notice of appeal was filed from the post-conviction proceeding. That's the reason the Nevada Supreme Court said, no, you can't put this declaration in now. We've already started the appeal. It's two years later. If you go back to the decision not to call Mr. Irwin. Yes, Your Honor. What was the information that was provided to him and what was the defense lawyer seeking to use him to testify about? Was it in fact, not whether there would be a more likely a shot because he has his finger on the trigger. Was it not focused upon the defective nature of the gun, which meant that you could only shoot, the gun's only going to go off if you actually pull the trigger. Yes, Your Honor. The expert was retained and for the purpose of doing what experts do, doing a scientific analysis of the firearm. And that was the actual mechanism, whether you dropped it or whether something other than pulling the trigger would cause the discharge. And that's what we point out in our brief, the loose fitting stock. Do you know if Mr. Irwin actually gave the opinion to the defense lawyer that he would testify consistent with the state's expert, that it would take a pulling of the trigger to actually fire the weapon. It was not going to fire by dropping or by accident. I don't think we have that in the record. We don't have a report from the expert. We do know is that the expert was retained and was noticed as having, as being a potential witness for the defense. And we know that after the cross examination, which was rather effective of the state's expert, he made the choice not to call the expert, which was on call and ready to testify, if necessary, about the mechanism of the gun and whether it could be accidentally discharged. And so this is one of the other problems for Mr. Brown, is that he can't demonstrate what the reason was for defense counsel not to call that expert. What you have before you. I want to understand, you know, in the series, because as you know, in these habeas things, where you go through a lot of different layers, the argument you're making now would really become it's before we would get to shin, correct? You're now in the looking at Martinez v. Ryan and whether there's cause to overcome default. And you're saying no, because there's not ineffective assistance of counsel. So this is kind of at the first layer. Is that right? Yes, Your Honor. We, of course, think shin bars it, but we don't think you need to get to get to shin in this case. I'd be happy to address you if you'd like. What we're arguing, Your Honor, is that he fails on both, both layers of the onion, so to speak, failing to show that post-conviction counsel was deficient, which is necessary to even get to a procedurally defaulted claim in this case, and also that the trial attorney didn't perform deficiently in their performance of the trial because the cross-examination of the state's expert, and we laid out in our brief, was rather effective at getting the point across that this loosely fitting stock could have caused the accidental discharge. And you can see in the closing arguments that are there, he actually tells the jurors, go back in that jury room, take the firearm, and you can see he's indicating during the arguments, you can't, it just says indicating, go back there, play with the firearms, pull the trigger, see for yourself what would happen if this weapon was held. And he doesn't just tell the jury to do that, but he supports it by pointing back to his cross-examination of the state's expert about how he said, I wouldn't fire that weapon with the loose fitting stock for comfort and safety reasons. And they get him to say that at least several times during cross-examination. And a reasonable defense attorney has to say, is this enough, or do I need to risk reinforcing the positive points for the state by putting my expert on the stand? What's the balance that I have to make between possibly reemphasizing the things that hurt my case versus something else in addition that will help my case? And these are things that defense attorneys have to, decisions that they have to make every single day in a trial, as I know many of the judges here know from personal experience. And in this case, the question is would every reasonable attorney have made a different decision based on what you have before you? And the answer to that question is no. And that's why the trial attorney didn't perform deficiently. I'd also like to get to prejudice. If you guys, if your honors, I apologize. If your honors would. Wyoming. I'm from Wyoming. We often say you guys and we mean everybody. I'd also like to get to prejudice. And I think this is the part that the defense attorney really had a hard road to hoe in this case. They were able to present evidence that on a prior occasion, he had actually held a shotgun to her head and threatened to kill her. That was the evidence that was presented to the jury. The jury also had evidence that for the 30 minutes after he shot her to death, that when law enforcement arrived, he played dumb. And he said, why are you here? I don't know why you're here. For 30 minutes he insisted after killing someone and leaving without calling law enforcement, he said, I don't know why you're here. And then he changed his story. And he didn't change his story to what Kishore Brown is now saying was the explanation. I want to read to you, if you'd allow me, to what he actually said to the first officer on the stand. This wasn't, I accidentally pulled the trigger. It was a different argument. It was that I got startled and there was someone in my house, so I just shot them. And this is the statement. They're different, and I think this is important. It wasn't that I had a loose-fitting stock and I accidentally pulled the trigger. It was I was startled, I was scared, so I shot the person, and then I realized it was someone else. This is the statement to Officer Marla Clayton. As she describes it on page 217 of the second volume in the transcript. He just picked up the shotgun. He fired it. He didn't even know who he was firing at, and he kept saying it was an accident. That's saying what Mr. Brown told him. So it wasn't that the loose-fitting stock was going on and accidentally fired it. It was that I got startled, and so I just pulled the trigger at the person I saw and shot him. And those are a degree of difference. But when you're analyzing prejudice and this new third argument, I don't know what's going on was the first. I just pointed at him and shot him was the second. And then now, oh, this loose-fitting stock caused me to accidentally discharge. It's just not reasonable. There also was testimony that she, in fact, yelled his name just before the shot. That's correct, Your Honor. And if I could disagree with one part of it, there was a period of time in the record from the witnesses that elapsed between him saying Mr. Brown's name and then there was one, two, three seconds before he pulled the trigger. And so there's also enough time for him to realize someone he'd been speaking with and knew their voice for 11 years, that it was them. The other person that recognized her voice, do you know how long he had known her for? And he didn't even see her. He just heard her down the hall. I believe it was two weeks. Maybe it was two months. I don't want to say. But it was 11 years, and he recognized her voice. Certainly Mr. Brown, who knew her for 11 years, would have recognized her voice as well. And there was other evidence there about what his intent was. He said he was going in there to shoot someone and kill someone. And there's also evidence in the record that they just had a dispute. He just walked off with two other women out the door while his significant other of 11 years was there, and she was upset about that. So there was some sort of dispute that was going on, in addition to the long history of domestic violence against her. And so this was a very difficult case for the defense to win, and they did an admirable job by cross-examining the states expert in this case. It just wasn't enough. And that's how a lot of these trials go. You can do a great job, but if the evidence is overwhelming, as it was in this case, you still sometimes don't succeed in winning the case. I would appreciate it if you would comment on Shin. Your argument, of course, is that Shin prevents us from considering this Irwin Declaration. Although in Shin, the court restricted consideration of new evidence related to the merits. So here we have a question of whether Shin would bar this evidence with respect to determining a cause situation. How do you parse Shin? I think what this court has to look at is it has to ground its analysis of Shin in the actual language of E2. And I think the key language there is develop the factual basis for the claim. And in this case, the factual basis for the claim wasn't developed. What would you do to develop a factual basis for a claim? You would first start with a declaration. Then you would have an evidentiary hearing, and that person would be subject to cross-examination. And then you have a factual finding by a post-conviction counsel, and the factual basis for the claim has been developed. Or if we're at a trial setting, we obviously have witnesses.  Yes, Your Honor. When a post-conviction petition is filed in a state district court, is the petitioner always entitled to an evidentiary hearing? The standard in Nevada is that if you put forth sufficient facts that, if true, would entitle you to relief, you're entitled to an evidentiary hearing. It's not a very high bar, but typically as long as you have actually put forth facts in the case, you can have an evidentiary hearing. And in this case, there was an evidentiary hearing that was held on several different issues, but they didn't develop the factual basis for this new claim. They tried to put in in the appellate court. And this court deals with this all the time. People try to put in new facts in the appeal, and this court denies most of those as well. I guess we sort of talked about it in our motion to expand the record. Of course, there's exceptions and that kind of thing, but the question is, did they develop the factual basis of the case by trying to put this declaration in two years after the notice of appeal? If that's all you have to do, it's going to cause chaos in the post-conviction proceedings because every single person is going to be trying to go back to state court and just slapping a declaration in there and say, Hooray, I've done it. I've developed the factual basis for a claim. That's not what the Shinri V. Ramirez stands for. They want to make sure that the state court is given the first crack at these cases. So your argument is that we should actually go right to the question about whether there was ineffective assistance of counsel at the trial level immediately so we don't have to deal with Shin, et cetera, assuming that we agree with what you've said. Your Honor, what I'm suggesting, because Shinri Ramirez wasn't actually really briefed much in this case, is that you don't need to get to Shinri Ramirez in this case. There's going to be a future case where you need to maybe get to Shinri Ramirez and flesh it out some more. Certainly we think Shinri Ramirez just ends it, and you could do that. I think that would be an easy way. But in this case, you don't need to go there. If this court has doubt that they've shown deficient performance of post-conviction counsel, deficient performance of trial counsel, and prejudice in this case, then certainly you should address Shinri Ramirez. Let me stop there because I thought, and correct me if I'm wrong, that the first line of analysis was under Martinez v. Ryan, cause to overcome the default, and that we were looking there at only the ineffective appellate counsel, not trial counsel. Is that correct? No. If I understand you right, Your Honor, and forgive me if I don't understand you right, in this case, the trial post-conviction counsel is alleged to have been ineffective, not appellate post-conviction counsel, and trial counsel is alleged to be ineffective. So there's no appellate counsel that is alleged to be ineffective in this case, if that's your question? Yeah. So there's no ineffective appellate counsel? Because you just argued earlier, why would appellate counsel be required to go back and reconstruct this? So I feel like we're mixing and matching trial counsel and appellate counsel and post-conviction counsel. So if you could just, there's a lot of lawyers here. So if you would just go back and restate your position as to each of those levels and what's on the table here, that would help me. Absolutely, Your Honor. I apologize if I mix and match my terms. So in order to make a Martinez claim, Mr. Brown is required to show that post-conviction counsel was ineffective for not raising the claim that trial counsel was ineffective in their not putting this expert on to say what was in the declaration. Our position is post-conviction counsel was not ineffective because there was no reason for them to know that this stock was not provided to the expert, and there was no reason for them to follow up with the expert. They didn't have under Strickland, in order to perform effectively, have to go and do that. All right, and I understand. Thank you. Thank you, Your Honor. Thank you. Would you put two minutes on the clock for Petitioner, for Appellant? Your Honor, the idea that counsel would have the good judgment to go to a firearm expert but didn't tell him that the gun was missing the grip and that that is not ineffective assistance, I think that flies in the face of logic. He went to the firearm expert because that was an important issue. He knew that, and that's why he went to the expert. Where he went south, horribly south, is that he failed to inform the expert of the most egregious defect the gun had. Whether the gun had a mechanical malfunction on the inside, that doesn't matter. That's not what the defense was. The defense wasn't that the gun went off magically on its own. The defense was that this happened under very stressful conditions and that Mr. Brown was startled by someone who he thought was a burglar, and that's why he inadvertently pressed the trigger. The condition of the gun is key, is critical to that fact. Let's talk about prejudice. And counsel noted he made a reference to a prior bad act, and there's no question that this case was infected by prior bad act testimony. There's also testimony that the victim in this case pointed out a firearm in Mr. Brown's head. So this was an extremely toxic relationship, but my client is guilty of some horrible things, and I suspect that's a big reason why he was convicted. He played dumb. I urged the court to read the testimony of his neighbor, counselor, and his partner, Christy Williams. I urged the court to read the testimony of Casius, the only individual who was there with him who thought this was an accident. I urged the court to read the testimony of the two detectives. Sorry, the three law enforcement officials, two detectives, one officer, who testified. He said the same thing to all of them. This was an accident. And this is why he's hysterical. He's going through a traumatic experience. And I urged the court, again, to read Casius' testimony. Casius' testimony, he's the one that said it was two seconds. He also said it was very quick. He said, and I quote, there was no time for conversation. Thank you, Your Honor. I apologize. Thank you, counsel. Counsel, we appreciate all your arguments this morning, and the matter is submitted.
judges: McKEOWN, PAEZ, Sessions